```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                            18 CR 398 (VEC)

 5   SYED ALI RAZA,

 6              Defendant.
                                             Plea
 7   ------------------------------x

 8                                           New York, N.Y.
                                             May 17, 2019
 9                                           2:05 p.m.

10   Before:

11
                      HON. VALERIE E. CAPRONI,
12
                                             District Judge
13
                         APPEARANCES
14
     GEOFFREY S. BERMAN
15        United States Attorney for the
          Southern District of New York
16   BY:  MATTHEW HELLMAN
          ELIZABETH ESPINOSA
17        Assistant United States Attorneys

18   PAUL DAVID PETRUS
          Attorney for Defendant
19

20   Also Present:
     Ashutosh Mishra, Interpreter (Urdu)
21   Matthew Sowa, Agent

22

23

24

25
```

1          (Case called)

2          MR. PECORINO:  Counsel, please state your names for

3  the record.

4          MR. HELLMAN:  Good afternoon.  Matthew Hellman and

5  Elizabeth Espinosa for the United States.  Also at counsel

6  table is Special Agent Matthew Sowa, FBI.

7          THE COURT:  Good afternoon.

8          MR. PETRUS:  Good afternoon Your Honor.  Paul Petrus

9  on behalf of Mr. Raza.

10          THE COURT:  Good afternoon, Mr. Petrus.

11          Good afternoon, Mr. Raza.

12          Could you swear in the interpreter, please.

13          (Interpreter sworn)

14          THE COURT:  Mr. Petrus, do I correctly understand that

15  your client wishes to plead guilty to Counts One and Two?

16          MR. PETRUS:  Yes, your Honor, he does.

17          THE COURT:  Mr. Raza, your attorney has told me that

18  you wish to plead guilty.  Before that can happen, I need to

19  ask you some questions so I can be sure that you're pleading

20  guilty because you are guilty and not for any other reason and

21  that you fully understand the rights that you are giving up and

22  the consequences of your plea.

23          Mr. Pecorino, could you please swear in the defendant.

24          (Defendant sworn)

25          MR. PECORINO:  State your full name for the record.

```
 1                 THE DEFENDANT:  Syed Ali Raza.

 2                 THE COURT:  Thank you.  Please be seated.

 3                 Mr. Raza, you're now under oath.  What that means is

 4       that if you answer any of my questions falsely, the government

 5       can use your answer against you in a prosecution for perjury or

 6       for making a false statement.

 7                 Do you understand that?

 8                 THE DEFENDANT:  Yes.

 9                 THE COURT:  How old are you?

10                 THE DEFENDANT:  (In English) Forty-four.

11                 THE COURT:  How far did you go in school?

12                 THE DEFENDANT:  (In English) Some college.

13                 MR. PETRUS:  I'm sorry.  If I could have just one

14       second regarding the language issue.

15                 (Defendant and counsel conferred)

16                 MR. PETRUS:  Thank you, your Honor.

17                 THE DEFENDANT:  I have study till FA.

18                 THE COURT:  Till FA?

19                 THE INTERPRETER:  That's correct.  That's what he

20       said.

21                 THE COURT:  What does that mean, that you studied

22       until FA?

23                 THE DEFENDANT:  That means I graduated in my country.

24                 THE COURT:  What country was that?

25                 THE DEFENDANT:  Pakistan.
```

1          THE COURT:  So you graduated from college in Pakistan?

2          THE DEFENDANT:  From government Zimitara college.

3          THE COURT:  How do you spell Zimitara?

4          THE INTERPRETER:  Z-i-m-i-t-a-r-a.

5          THE COURT:  Mr. Raza, are you able to read and

6  understand English?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Are you having any difficulty

9  understanding the interpreter?

10          THE DEFENDANT:  No.

11          THE COURT:  Mr. Raza, are you now or have you recently

12  been under the care of a doctor or a psychiatrist?

13          THE DEFENDANT:  No.

14          THE COURT:  Have you ever been treated or hospitalized

15  for any mental illness or any type of addiction, including drug

16  or alcohol addiction?

17          THE DEFENDANT:  No.

18          THE COURT:  In the past 24 hours, have you taken any

19  drugs, medicines, or pills?  Or have you consumed any alcohol?

20          THE DEFENDANT:  I have only taken my blood pressure

21  medication.

22          THE COURT:  Does that medication interfere at all with

23  your ability to perceive what's going on around you and to

24  think clearly?

25          THE DEFENDANT:  No.

1           THE COURT:  Is your mind clear today?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Your attorney has told me that you wish to

4    plead guilty.

5           Is that correct?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Have you had an opportunity to discuss

8    this case with your attorney, including the consequences of

9    pleading guilty?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Are you satisfied with Mr. Petrus and his

12   representation of you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Does either attorney have any doubt as to

15   the defendant's competence to enter a guilty plea at this time?

16          MR. HELLMAN:  I do not.

17          MR. PETRUS:  No, your Honor.

18          THE COURT:  On the basis of the defendant's responses

19   to my questions and my observations of his demeanor, I find

20   that he is fully competent to enter an informed guilty plea at

21   this time.

22          Mr. Raza, before I accept your guilty plea, I'm going

23   to describe to you the rights that you have that you will be

24   giving up if you plead guilty.

25          Please listen carefully.  If you don't understand any

1   of my questions or if you just want an opportunity to talk to

2   your attorney, tell me that.  And I'll stop and give you an

3   opportunity to talk to your attorney.

4           Okay?

5           THE DEFENDANT:  Okay.

6           THE COURT:  Your attorney has told me that you wish to

7   plead guilty.  You have the right to plead not guilty and to

8   persist in that plea.

9           Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  You have the right to be represented by an

12  attorney at trial and at every other stage of the proceedings.

13  If you cannot afford an attorney, an attorney will be appointed

14  to represent you without cost to you.

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  You have the right to a speedy and public

18  trial by a jury on the charges against you which are contained

19  in the indictment in this case.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  If you went to trial, you would be

23  presumed innocent, and the government would be required to

24  prove that you were guilty beyond a reasonable doubt.  You

25  would not have to prove that you're innocent at trial.

1                Do you understand that?

2                THE DEFENDANT:  Yes.

3                THE COURT:  If you went to trial, you would have the

4    right to see and hear all of the witnesses, and your attorney

5    could cross-examine the witnesses that the government calls.

6                Do you understand that?

7                THE DEFENDANT:  Yes.

8                THE COURT:  If you went to trial, your attorney could

9    object to the government's evidence.  You would also have the

10   right to present evidence and the right to compel witnesses to

11   come to court to testify on your behalf.

12               Do you understand that?

13               THE DEFENDANT:  Yes.

14               THE COURT:  If you went to trial, you would have the

15   right to testify if you wanted to, but you could not be forced

16   to testify if you did not want to.  If you chose not to

17   testify, I would tell the jury that they could not hold that

18   against you.

19               Do you understand that?

20               THE DEFENDANT:  Yes.

21               THE COURT:  If there were a trial, the jury would be

22   composed of 12 people, and all 12 would have to agree that the

23   government has proven you guilty beyond a reasonable doubt

24   before you could be found guilty.

25               Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  If you were convicted at trial, you would

3    have the right to appeal the verdict.

4          Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  If you plead guilty and I accept that

7    plea, you will be giving up all of the rights that I have just

8    described except your right to an attorney, and you would be

9    found guilty just based on your plea of guilty.

10          Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that you can change your

13    mind right now and tell me that you've changed your mind and

14    you want to go to trial?

15          (Defendant and counsel conferred)

16          THE DEFENDANT:  I don't wish to change my mind.

17          THE COURT:  Mr. Raza, have you received a copy of the

18    indictment in this case which is numbered 18 CR 398?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Have you read the indictment?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Did you discuss the indictment with your

23    attorney?

24          THE DEFENDANT:  Yes.

25          THE COURT:  You're charged or you're offering to plead

1  guilty to two counts.  Count One charges you with conspiracy to

2  commit access fraud, and Count Two charges you with aggravated

3  identity theft.

4          Do you understand what you're being charged with?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Mr. Hellman, what are the elements of

7  these two crimes?

8          MR. HELLMAN:  Yes, your Honor.  With respect to Count

9  One, conspiracy to commit access device fraud, the crime of

10  conspiracy has two elements:  First, that two or more persons

11  in some way or manner agreed to try to accomplish a common and

12  unlawful plan to commit access device fraud and that at least

13  one overt act was committed in furtherance of that conspiracy.

14          The object of the conspiracy as just stated is under

15  Title 18, U.S. Code, Section 1029(a)(2).

16          THE COURT:  Excuse me.  Let me just interrupt.

17          Is he charged with a 371 conspiracy?

18          MR. HELLMAN:  No, your Honor.

19          THE COURT:  There is an overt act requirement in the

20  access fraud conspiracy?

21          MR. HELLMAN:  I believe there is.

22          THE COURT:  Okay.

23          MR. HELLMAN:  There are four elements of that fraud:

24  First, that the defendants produced, used, or trafficked in one

25  or more counterfeit access devices;

1          Second, that the defendant did so during a one-year

2     period to obtain anything of value worth $1,000 or more during

3     that period;

4          Third, that the defendants acted knowingly and with

5     intent to defraud;

6          Fourth, that the defendant's conduct in some way

7     affected commerce between one state and another.

8          With respect to Count Two, aggravated identity theft,

9     the elements are as follows:  First, that the defendant

10    knowingly transferred, possessed, or used a means of

11    identification of another person;

12         Second, that the defendant used the means of

13    identification during and in relation to the offense of access

14    device fraud charged here in Count One;

15         Third, that the defendant acted without lawful

16    authority to use that identification.

17         The government would also need to prove by a

18    preponderance of the evidence that venue in the Southern

19    District of New York is proper.

20         THE COURT:  Thank you.

21         Mr. Raza, if you don't plead guilty, the government

22    would have to prove all of the elements that Mr. Hellman just

23    laid out beyond a reasonable doubt at trial.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

1          THE COURT:  The maximum possible penalty for Count

2     One, which is the conspiracy count, is a term of imprisonment

3     of up to five years; a term of supervised release of up to

4     three years; a fine of $250,000 or two times the pecuniary gain

5     from the crime or two times the pecuniary loss from the crime,

6     whichever one of those numbers is the largest; and a mandatory

7     $100 special assessment.

8          The maximum penalty for Count Two is a mandatory term

9     of imprisonment of two years that must be consecutive to any

10    other term of imprisonment that's imposed; a term of supervised

11    release of up to one year; a fine of $250,000 or two times the

12    pecuniary gain from the crime or two times the pecuniary loss

13    from the crime, whichever one of those numbers is the largest;

14    and a mandatory $100 special assessment.

15         Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Supervised release means that you'll be

18    subject to monitoring and supervision after you're released

19    from prison.

20         Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  There are terms and conditions of

23    supervised release that you have to comply with.  If you don't

24    comply with those terms and conditions, you can be returned to

25    prison without a jury trial.

1      Do you understand that?

2      THE DEFENDANT:  Yes.

3      THE COURT:  If you violate the terms and conditions of

4  supervised release and you're sent back to prison, that new

5  prison term can be for all or part of the term of supervised

6  release.  You will not necessarily get credit for time that

7  you've already served on supervised release.

8      Do you understand that?

9      THE DEFENDANT:  Yes.

10      THE COURT:  As part of your sentence, I can order you

11  to pay restitution to any person or any institution that was

12  injured as a result of your criminal conduct.

13      Do you understand that?

14      THE DEFENDANT:  Yes.

15      THE COURT:  You're pleading guilty to two different

16  counts in the indictment.  I'm going to impose a separate

17  sentence on each count.

18      Do you understand that?

19      THE DEFENDANT:  Yes.

20      THE COURT:  In your case, the sentence on Count Two,

21  as I mentioned, must be consecutive to the sentence on Count

22  One.

23      Do you understand that?

24      THE DEFENDANT:  Yes.

25      THE COURT:  So if I impose the maximum possible

1   penalty on Count One and I have to impose a two-year penalty on

2   Count Two, that means you're facing a maximum possible term in

3   jail of seven years.

4            Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Mr. Raza, if I accept your guilty plea and

7   I adjudge you guilty, that adjudication may deprive you of

8   valuable civil rights such as the right to vote, the right to

9   hold public office, the right to serve on a jury, the right to

10  possess any type of a firearm, and the right to hold certain

11  professional licenses.

12           Do you understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Mr. Raza, are you a United States citizen?

15           THE DEFENDANT:  No.

16           THE COURT:  What's your immigration status?

17           THE DEFENDANT:  I have a green card.

18           THE COURT:  Okay.  Mr. Petrus, have you discussed with

19  your client the likely immigration consequences of his plea?

20           MR. PETRUS:  Yes, your Honor.  On multiple occasions.

21           THE COURT:  Am I correct that it's virtually assured

22  that he's going to be deported as a result of this conviction?

23           MR. PETRUS:  My thinking is that he is.

24           THE COURT:  Mr. Raza, have you discussed with your

25  attorney the likely immigration consequences of your conviction

1    in this case?

2             THE DEFENDANT:  Yes.

3             THE COURT:   In all likelihood, you are going to be

4    deported from the United States after you serve your sentence.

5             Do you understand that?

6             THE DEFENDANT:  Yes.

7             THE COURT:   If for whatever reason you're not deported

8    after you serve your sentence or if you're held in the

9    United States pending deportation after you serve your

10   sentence, you'll be subject to supervised release.

11            Do you understand that?

12            THE DEFENDANT:  Yes.

13            THE COURT:   If you're deported and you return to the

14   United States during the period of your supervised release

15   without the permission of the government, that would be a

16   crime.  But it would also be a violation of the terms of

17   supervised release.

18            Do you understand that?

19            THE DEFENDANT:  Yes.

20            THE COURT:   If that were to happen, you could be

21   returned to prison without the right to a jury trial.

22            Do you understand that?

23            THE DEFENDANT:  Yes.

24            THE COURT:   If for any reason, Mr. Raza, the

25   immigration consequences are different from what anyone has

1  told you they will be, different from what I have told you they

2  will be or likely will be or what you hope they will, that will

3  not be a grounds for you to withdraw your guilty plea.

4        Do you understand that?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Mr. Raza, there are sentencing guidelines

7  that I must consider in determining the appropriate sentence in

8  your case.

9        Do you understand that?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Have you talked to your attorney about how

12  the guidelines will apply in your case?

13        THE DEFENDANT:  Yes.

14        THE COURT:  I'm going to have to calculate a guideline

15  range and consider that range in determining what your sentence

16  will be.

17        Do you understand that?

18        THE DEFENDANT:  Yes.

19        THE COURT:  In addition to determining what the

20  guideline range is, I'll also have to consider the sentencing

21  factors that are set forth in federal law.  Federal law

22  requires me to consider a number of other factors about you and

23  about the offense in determining the appropriate sentence in

24  your case.

25        Do you understand that?

1      THE DEFENDANT:  Yes.

2      THE COURT:  So even after I determine the guideline

3  sentencing range for your case, when I consider these other

4  factors, they could lead me to a sentence that is either above

5  or below the guideline range.

6      Do you understand that?

7      THE DEFENDANT:  Yes.

8      THE COURT:  If your attorney or anyone else has

9  attempted to estimate or predict what your sentence will be,

10  their estimate or prediction could be wrong.

11      Do you understand that?

12      THE DEFENDANT:  Yes.

13      THE COURT:  It's perfectly appropriate for you and

14  your attorney to talk about how your sentence will be

15  determined, but nobody can give you any assurance of what your

16  sentence will actually be.  It's my job to determine your

17  sentence, and I can't do that until I've done the other things

18  that I just described.

19      Do you understand that?

20      THE DEFENDANT:  Yes.

21      THE COURT:  So nobody, not even I, can today predict

22  what your sentence will be.

23      Do you understand that?

24      THE DEFENDANT:  Yes.

25      THE COURT:  Mr. Raza, I'm stressing this at some

1   length because it's important for you to understand that if

2   your sentence is different from what anyone has estimated or

3   predicted it will be or what you hope it will be, that will not

4   be a grounds for you to withdraw your guilty plea.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  If you're sentenced to prison, there is no

8   parole.  Therefore, you cannot be released early on parole.

9          Do you understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  I've been given copy of a plea agreement

12   which we'll mark as Court Exhibit 1.

13         Did you sign the plea agreement?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Did you read the agreement before you

16   signed it?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Did you discuss it with your attorney

19   before you signed it?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Are there any agreements, promises, or

22   understandings with the government that are not contained in

23   the plea agreement?

24         THE DEFENDANT:  No.

25         THE COURT:  Has anyone threatened you or forced you to

1    plead guilty?

2              THE DEFENDANT:  No.

3              THE COURT:  Other than what's in the plea agreement,

4    has anyone promised you anything or offered you any inducement

5    to plead guilty?

6              THE DEFENDANT:  No.

7              THE COURT:  Has anyone made a promise to you of what

8    your sentence will be?

9              THE DEFENDANT:  No.

10             THE COURT:  One of the provisions that's in your plea

11   agreement is what's called a waiver of the statute of

12   limitations.

13             What that waiver means is that if for some reason at

14   some point in the future your plea is withdrawn or your

15   conviction is vacated, the government will be allowed to charge

16   you at that point in time in the future with any crime they

17   could charge you with today, notwithstanding the passage of

18   time.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  You're giving up your right to argue that

22   the statute of limitations has run.

23             Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  The plea agreement also contains an

1    agreement or a stipulation between you and the government

2    regarding the sentencing guidelines calculation that your

3    attorney and the government attorney believes applies to you.

4         That agreement is binding on you, and it's binding on

5    the government, but it's not binding on me.

6         Do you understand that?

7         THE DEFENDANT:  Yes.

8         THE COURT:  Regardless of what you and the government

9    have agreed to in the plea agreement regarding the guidelines

10   calculation, I'm going to do my own guidelines calculation.

11        Do you understand that?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Most of the time, 99.9 percent of the

14   time, I come up with the same thing that the lawyers have come

15   up with, but it's not always the same.

16        Do you understand that?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Another provision that's in the plea

19   agreement is that you are waiving your right to appeal your

20   sentence or to collaterally attack the sentence so long as I

21   sentence you within or below the guideline range that you and

22   the government have stipulated to.

23        Do you understand that?

24        THE DEFENDANT:  Yes.

25        THE COURT:  So in your case, that means that so long

1    as your term of imprisonment is 54 months or less and so long

2    as any fine is $95,000 or less, you are agreeing not to appeal

3    and not to collaterally attack your sentence.

4            Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Okay, Mr. Raza.  In order to accept your

7    plea, I have to be convinced that you actually committed these

8    crimes.  So can you tell me what you did to commit the crimes.

9            MR. PETRUS:  Your Honor, if I may, just before he

10   begins, he did take time to write out a plea allocution which

11   we've discussed.

12           THE COURT:  That's fine.

13           MR. PETRUS:  Thank you, your Honor.

14           THE COURT:  If you're going to read something,

15   Mr. Raza, I'm going to ask you to read it slowly so that we can

16   all understand you.

17           THE DEFENDANT:  From January 2015 to May 2018, me and

18   my other accomplices --

19           THE COURT:  Hang on a second.  Stop.  Back up.

20           He and his accomplices did what?

21           THE INTERPRETER:  You could have it read back,

22   your Honor.

23           THE COURT:  Mr. Raza, please start again.  Speak up

24   nice and loudly.

25           Mr. Interpreter, you also need to speak up nice and

1    loudly.

2              THE DEFENDANT:  From January 2015 to May 2018, me and

3    some other accomplices -- we did a device fraud in the area of

4    the Southern District of New York.  I applied for credit cards

5    and credit card machines and those things.

6              We used those things for peoples' identities.  And I

7    knew that this was not a legal activity.  I used the credit

8    card machine.  I used the credit card machine with credit card

9    companies and with banks for an amount more than $1,000.  I did

10   a transaction of a thousand dollars which was fraudulent and

11   fake.

12             MR. PETRUS:  Should we proceed to Count Two,

13   your Honor?

14             THE COURT:  No.  Let's deal with Count One first.

15             You said you did a device fraud in the Southern

16   District of New York.

17             THE DEFENDANT:  Yes.

18             THE COURT:  And that you applied for credit cards and

19   a credit card machine and "those things."

20             What were "those things"?

21             THE DEFENDANT:  Which things I did not understand,

22   your Honor.

23             THE COURT:  I don't know either, Mr. Raza.  What you

24   said was -- when you were allocuting, you said that you applied

25   for credit cards and you applied for a credit card machine and

1   "those things."

2              Was there something else that you got in connection

3   with this scheme?

4              (Defendant and counsel conferred)

5              THE DEFENDANT:  I had submitted paperwork.

6              THE INTERPRETER:  Your Honor, the interpreter did not

7   hear a part of what the defendant said because he mumbled.

8              THE COURT:  Say it again, Mr. Raza.

9              THE DEFENDANT:  I had submitted paperwork for applying

10  for machines and for credit cards.

11             THE COURT:  What do you mean by a "credit card

12  machine"?

13             THE DEFENDANT:  Credit card machines are those

14  machines on which you can swipe cards, credit cards.

15             THE COURT:  And if you swipe a card, then money is

16  going to move from the cardholder's account to your account;

17  correct?

18             THE DEFENDANT:  That is correct.

19             THE COURT:  You said you applied for credit cards and

20  credit card machines.

21             Who did you apply to?

22             THE DEFENDANT:  To banks and to credit card companies.

23             THE COURT:  When you applied for the credit card

24  machine and the credit cards, did you give the bank and the

25  credit card company accurate information?

 1              THE DEFENDANT:  No.  The name who I mentioned in the

 2     card was not correct.

 3              THE COURT:  Was not correct?

 4              THE DEFENDANT:  Yes.  They were not correct.

 5              THE COURT:  So you applied for a credit card in

 6     someone else's name; is that correct?

 7              THE DEFENDANT:  Yes.

 8              THE COURT:  And how about when you applied to the bank

 9     for the credit card machine?  Did you provide accurate and

10     truthful information to the bank?

11              THE DEFENDANT:  No.

12              THE COURT:  Did you have information on real people

13     that you used in order to get the credit cards?

14              THE DEFENDANT:  What thing, your Honor?

15              THE COURT:  I'm sorry?  What did you say,

16     Mr. Interpreter?

17              THE INTERPRETER:  I interpreted what the defendant

18     said.  He said:  "What thing, your Honor?"

19              THE COURT:  I'm having difficulty hearing you.  So if

20     you could make sure that you speak up nice and loud, that would

21     be helpful.

22              THE INTERPRETER:  Okay, your Honor.

23              THE COURT:  When you applied for credit cards in other

24     peoples' names, did you have real information on those people?

25     So real names, real addresses, in order to obtain the credit

1       cards?

2              THE DEFENDANT:  No.

3              THE COURT:  So you just made up names and addresses?

4              MR. PETRUS:  Your Honor, if I could just have one

5       moment on that point.

6              THE COURT:  Sure.

7              (Defendant and counsel conferred)

8              MR. PETRUS:  Let the record reflect that my client is

9       also having problems hearing, as the Court is, and apparently

10      as the interpreter is as well.

11             THE COURT:  Mr. Interpreter, how about this.  Perhaps

12      if you sat next to him and, instead of using the equipment,

13      just interpret.  Take your headsets off.

14             I think the pending question is:  When you applied for

15      credit cards, were you using real peoples' names and

16      information, or did you just make it up?

17             THE DEFENDANT:  The names were of real people.

18             THE COURT:  Did you have their permission to use their

19      name?

20             THE DEFENDANT:  No.

21             THE COURT:  And when you applied for credit card

22      machines, did you lie to the bank about the identity of the

23      merchant that was going to be using those machines?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And you said that you were doing this from

1    January 2015 to May 2018.

2              Is that correct?

3              THE DEFENDANT:  Yes.

4              THE COURT:  During any one-year period, did you

5    receive more than $1,000 from this conspiracy?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Did you intend to mislead the bank and the

8    credit card company when you obtained the credit cards and the

9    credit card machine?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Is the government relying on the false

12   credit cards as the counterfeit devices?

13             MR. HELLMAN:  The cards and the card readers as well.

14             THE COURT:  Because they were obtained fraudulently?

15             MR. HELLMAN:  Correct.

16             THE COURT:  Let's move on to Count Two.

17             THE DEFENDANT:  From January 2015 through May 2018, I

18   stole information about individuals in the area of the Southern

19   District of New York.  I got the information of other people,

20   their Social Security numbers.  And in an illegal manner, I

21   used that information in an illegal and fraud manner.

22             THE COURT:  What did you do with it?

23             THE DEFENDANT:  I applied for their credit cards.

24             THE COURT:  And you said that you did that around the

25   Southern District of New York.

1              Where were you operating?

2              THE DEFENDANT:  In the Southern District of New York.

3              THE COURT:  What county?

4              THE DEFENDANT:  In Kings County.

5              THE COURT:  How did it affect the Southern District?

6    He was operating in Kings County, which last time I checked,

7    was Eastern District.

8              How did it affect the Southern District?

9              MR. PETRUS:  We're going to proffer, your Honor.

10             THE COURT:  I'll just ask the government.  We're not

11   going to get bogged down over venue, but I would like a record.

12             MR. HELLMAN:  Yes.  It is the government's evidence

13   that the defendant operated in and around the Southern District

14   in the following ways:  First, wire transactions transited or

15   passed through the Southern District and affected financial

16   institutions in the Southern District, including those call

17   transactions, using stolen or fraudulent Social Security

18   numbers.  So it affected both Counts One and Two.

19             The defendant and coconspirators also transited from

20   the Eastern District to other districts and passed through the

21   Southern District on their way to locations outside of New York

22   state in furtherance of the fraud.

23             THE COURT:  What were they doing outside of New York

24   state in furtherance of the fraud?

25             MR. HELLMAN:  In various other states, including

1   Pennsylvania and Rhode Island, for example, the defendant and

2   his coconspirators established storefronts which were

3   commercial locations which were rented to give the appearance

4   to financial institutions of legitimate business taking place

5   though none in fact was.

6          THE COURT:  Mr. Raza, did you hear what the prosecutor

7   just said?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Did you travel from Kings County to other

10  states to set up false storefronts?

11         MR. PETRUS:  Your Honor, I'm sorry.  Are we dealing at

12  the aggravated identity theft right now?

13         THE COURT:  It's both.  It's relevant to both.  I'm

14  just trying to establish venue, and the government has

15  proffered this.

16         Does he disagree that that was done?

17         THE DEFENDANT:  Yes.  We were operating in different

18  states.

19         THE COURT:  Those were not legitimate businesses in

20  the other states?  Is that correct?

21         THE DEFENDANT:  No.

22         THE COURT:  Did you set up these sort of fake

23  businesses to fool the bank so the bank would think that you

24  were a legitimate business to give you the credit card machine?

25         THE DEFENDANT:  Yes.

```
 1              THE COURT:  Also when you were talking about Count

 2    One, you said you and your accomplices did these things.

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  You don't have to tell me what the other

 5    peoples' names were.

 6              Did you agree with other people to participate in this

 7    scheme?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  And you said you stole peoples'

10    Social Security numbers.  Is that correct?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Did they give you their permission to use

13    their Social Security number?

14              THE DEFENDANT:  No.

15              THE COURT:  Mr. Raza, when you did all these things,

16    did you know that what you were doing was wrong and against the

17    law?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Did anyone threaten you or coerce you or

20    force you to participate in this scheme?

21              THE DEFENDANT:  No.

22              THE COURT:  Does either attorney wish for me to make

23    further inquiry?

24              MR. HELLMAN:  No, your Honor.

25              THE COURT:  Mr. Petrus?
```

1              MR. PETRUS:  No.

2              THE COURT:  Mr. Petrus, do you know of any valid

3    defense that would prevail at trial or any reason why your

4    client should not be permitted to plead guilty?

5              MR. PETRUS:  Not at this time, your Honor.

6              THE COURT:  Do you believe there is an adequate

7    factual basis to support the plea?

8              MR. PETRUS:  Yes, your Honor.

9              THE COURT:  Mr. Hellman, do you believe there is an

10   adequate factual basis to support the plea?

11             MR. HELLMAN:  Yes.  Thank you.

12             THE COURT:  Mr. Raza, how do you plead to Count One?

13   Guilty or not guilty?

14             THE DEFENDANT:  Guilty.

15             THE COURT:  How do you plead to Count Two?  Guilty or

16   not guilty?

17             THE DEFENDANT:  Guilty.

18             THE COURT:  Are you pleading guilty voluntarily and of

19   your own free will?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Mr. Raza, the indictment also charges that

22   you are required to forfeit to the government property that was

23   proceeds of the crime or property that was used to commit or

24   facilitate the crime.

25             Do you agree to forfeit such property to the

1    government?

2              THE DEFENDANT: Yes.

3              THE COURT: Specifically, according to the plea

4    agreement, you are agreeing to forfeit $382,945.73.

5              Is that correct?

6              (Defendant and counsel conferred)

7              MR. PETRUS: Your Honor, he agrees to forfeit. The

8    problem is there might not be that money to forfeit. He's

9    indicated to me that there is none.

10             THE COURT: Is he agreeing to the forfeiture order?

11             MR. PETRUS: We're not objecting to the forfeiture

12    order, your Honor.

13             THE COURT: I think you actually agreed to it in here.

14    Yes. There is actually an agreement to forfeit the property.

15             Mr. Petrus, I'm not trying to trip you up, but you've

16    agreed to the forfeiture which is a little different than just

17    not objecting to the forfeiture.

18             MR. PETRUS: He agrees to the forfeiture. The issue

19    is he's telling me he doesn't have the funds. We're not

20    objecting.

21             THE COURT: Did the government understand that?

22             MR. HELLMAN: Yes.

23             THE COURT: And you understand, Mr. Raza, that that

24    forfeiture does not affect what I may order you to pay in

25    restitution or in a fine?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Okay.  I find that there is an adequate

3    factual basis for the plea; that Mr. Raza understands the

4    rights he is giving up and is waiving those rights knowingly

5    and voluntarily.

6           I find Mr. Raza understands the consequences of his

7    plea, including the potential sentences that may be imposed,

8    and has agreed to forfeit the proceeds of the crime and

9    property that was used to commit or facilitate the crime.

10          Because I find that the defendant's plea is entered

11   knowingly and voluntarily and is supported by an independent

12   factual basis for each and every element of the crimes charged,

13   I accept his guilty plea.

14          I direct that a presentence investigation be conducted

15   by the probation office and that a presentence report be

16   prepared.

17          Mr. Raza, you're going to be interviewed as part of

18   the presentence investigation process.  You can and you should

19   have your attorney with you for that interview.  If you decide

20   to say anything to the probation officer, it's important that

21   what you say is truthful and complete.

22          The report that probation prepares is very important

23   to me in determining what an appropriate sentence is in your

24   case.  So it's important that I have complete and accurate

25   information.

1          Probation will prepare a draft report which will be

2    provided to your attorney.  He'll provide it to you.  Read it

3    carefully.  And if anything in it isn't correct, make sure that

4    you tell Mr. Petrus so he can tell probation so the report can

5    be corrected before I see it.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Both you and your attorney will have an

9    opportunity to speak on your behalf at the time of sentence.

10          Mr. Petrus, please schedule his appointment in the

11   next two weeks.

12          Mr. Hellman, please provide a statement of the

13   government's case to probation in the next two weeks.

14          MR. HELLMAN:  Yes, your Honor.

15          THE COURT:  Sentencing is scheduled for September 17

16   at 11:00.  Presentence submissions are due September 3.

17          What's the bail status of Mr. Raza?

18          MR. HELLMAN:  Mr. Raza is on bail with conditions.

19          THE COURT:  Thank you, Mr. Hellman.  I sort of figured

20   that out since we don't have marshals here.

21          MR. HELLMAN:  Yes, Judge.  I only mean that it's not

22   ROR status.

23          THE COURT:  Mr. Hellman, he's not a U.S. citizen.

24          What are the bail conditions?  Do you know?

25          MR. HELLMAN:  Just one moment.

 1          MR. PECORINO:  A $50,000 bond cosigned by two FRPs;

 2   travel restricted to SDNY, EDNY, and New Jersey; surrender

 3   travel documents and no modifications; strict pretrial;

 4   electronic monitoring with GPS.

 5          THE COURT:  Do you have a bracelet on?

 6          THE DEFENDANT:  Yes.

 7          THE COURT:  I take it the government is not seeking to

 8   revoke his bail.

 9          MR. HELLMAN:  No, your Honor.

10          THE COURT:  Mr. Raza, the bail conditions are going to

11   be continued.  It is critical that you comply with the bail

12   conditions.  It's also critical that you stay in touch with

13   your attorney.  Sentencing dates have a tendency to get

14   changed.  It's very important that you return to court on the

15   day of sentencing.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  If you fail to return for sentencing, that

19   is called bail jumping, and that is a separate crime.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Thank you, all.  I'll see you in

23   September.

24          (Adjourned)

25